IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-957-D

| | | |
|---|---|---|
| NANCY MASSENBURG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| INNOVATIVE TALENT SOLUTIONS, INC., | ) | |
| and LEE AIR CONDITIONERS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

On February 2, 2017, Nancy Massenburg ("Massenburg" or "plaintiff"), proceeding pro se

and in forma pauperis, filed a complaint against Ashley Hunt, d/b/a Innovative Talent Solutions, Inc.

("ITS") and an unnamed client of ITS for whom a discriminatory hiring policy was enforced

("Unnamed Client"), seeking relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended, 42 U.S.C. § 2000e et seq. [D.E. 7]. On May 3, 2017, Massenburg filed a first amended

complaint against Ashley Hunt ("Hunt"), Kimberly Korando ("Korando"), and the Unnamed Client

[D.E. 33].[1]  On May 30, 2018, while her motion for leave to file a second amended complaint was

pending [D.E. 97], Massenburg filed a second amended complaint that replaced the Unnamed Client

with Lee Air Conditioners, Inc. ("Lee Air"; with ITS, "defendants") as a defendant and alleged new

claims against ITS [D.E. 128].

On April 20, 2018, ITS moved for summary judgment [D.E. 112], filed a statement of

material facts [D.E. 113], and filed a memorandum in support [D.E. 115].  On May 14, 2018,

_____

[1] On August 2, 2017, this court dismissed Massenburg's claims against Hunt and Korando
with prejudice [D.E. 64].

Massenburg responded in opposition [D.E. 122], filed an opposing statement of material facts [D.E. 123], and filed other supporting documents [D.E. 124]. On June 14, 2018, ITS moved to strike Massenburg's second amended complaint [D.E. 134], and ITS filed a memorandum in support [D.E. 135]. On June 19, 2018, Massenburg responded in opposition [D.E. 137]. On July 3, 2018, ITS replied [D.E. 145]. On July 27, 2018, Lee Air moved to dismiss Massenburg's second amended complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted [D.E. 154]. On August 20, 2018, Massenburg responded in opposition [D.E. 161]. On September 4, 2018, Lee Air replied [D.E. 165]. Finally, on April 18, 2018, Massenburg moved to extend the deadline for dispositive motions established in this court's scheduling order of November 6, 2017 [D.E. 110]. On May 8, 2018, ITS responded in opposition [D.E. 121].

As explained below, the court grants ITS's motion for summary judgment, grants ITS's motion to strike, and grants Lee Air's motion to dismiss. The court denies Massenburg's motion for leave to file a second amended complaint, denies Massenburg's motion to file a sur-reply, denies Massenburg's motion to amend the scheduling order, and dismisses as moot Massenburg's motion for a protective order and order to compel. Finally, the court strikes Massenburg's latest filing [D.E. 171] and dismisses as moot defendants' motion to strike.

I.

ITS is an employment agency that Hunt owns and operates. See [D.E. 113] ¶ 1; Hunt Aff. [D.E. 114-3] ¶ 2. As part of an initial screening process for candidates, ITS requires applicants to complete an online application. See [D.E. 113] ¶¶ 2–3. ITS provides all candidates with a notification and release form that outlines ITS's policies on background checks. See id. ¶ 4. ITS does not conduct a background check on any candidate until a client extends a conditional job offer to that candidate and the candidate has accepted it. See id. ¶ 6; Hunt Aff. [D.E. 114-3] ¶ 4. No ITS-

2

sponsored candidate has been disqualified from an accepted offer because of full disclosure of the candidate's criminal history. See [D.E. 113] ¶ 7; [D.E. 114-2] 3.

Lee Air contracted with ITS to obtain referrals for qualified candidates for employment with Lee Air. See [D.E. 113] ¶ 11; Hunt Aff. [D.E. 114-3] ¶ 3. In 2014, Lee Air requested candidates for a dispatcher position and asked that the candidate have at least one year of dispatcher experience, preferably in the HVAC industry. See [D.E. 113] ¶ 12; Hunt Aff. [D.E. 114-3] ¶ 5. ITS identified one highly qualified candidate, Angela V., who had two years of dispatcher experience in the HVAC industry. See [D.E. 113] ¶¶ 13–15. ITS identified two other qualified candidates who met Lee Air's requirements. See id. ¶ 16. One of these candidates, Natasha H., was an African-American woman. See id. ¶ 17; Hunt Aff. [D.E. 114-3] ¶ 7. At the time, ITS did not intend to refer any other candidates for the position to Lee Air. See [D.E. 113] ¶ 19. Ultimately, Lee Air hired Angela V. See id. ¶ 20.

On October 9, 2014, before Lee Air hired Angela V., an ITS recruiter named Katherine White ("White") contacted Massenburg after finding Massenburg's résumé online. See id. ¶ 21. Massenburg alleges that White told Massenburg that it was difficult to find a candidate with dispatcher experience. See id. ¶ 22; cf. [D.E. 123] ¶ 22. White encouraged Massenburg to apply for the Lee Air position and informed her that Lee Air would want to conduct a background check. See [D.E. 113] ¶¶ 23, 26. White stated that the background check would extend for seven years, and Massenburg indicated that the check would not raise any issues. See id. ¶ 24. White did not provide ITS or Hunt with Massenburg's résumé. See id. ¶ 27.

On October 10, 2014, Massenburg applied online to ITS. See id. ¶ 28. In her application, Massenburg admitted that she had been convicted of assault of a government official in 1997. See id. ¶¶ 29–30. Later that day, Hunt called Massenburg to tell her not to come in for the interview that White had scheduled because ITS had already identified all the candidates that ITS intended to refer

3

to Lee Air. See id. ¶¶ 31–32. ITS claims that Hunt did so to save Massenburg time and effort. See id. Massenburg, however, claims that Hunt told her that Lee Air would not hire anyone with a conviction. See id. ¶ 33; [D.E. 123] ¶ 33; [D.E. 114-1] 47–48. Massenburg did not attend the interview that White scheduled. See [D.E. 114-2] 14.

Lee Air does not disqualify candidates with convictions, and Lee Air has hired at least one candidate with a criminal history. See [D.E. 113] ¶ 34; Hunt Aff. [D.E. 114-3] ¶ 14. According to ITS, Hunt believed that the other three candidates were more qualified than Massenburg for the Lee Air job. See [D.E. 113] ¶ 40; Hunt Aff. [D.E. 114-3] ¶ 11. Unlike Angela V., Massenburg lacked dispatcher experience in the HVAC industry and lacked recent dispatcher experience in any industry. See [D.E. 113] ¶ 40. Massenburg did not include her dispatcher experience with Cardinal Cab Company in her application, and she did not submit her résumé to ITS. See id. ¶¶ 36–39. Massenburg alleges that two candidates that ITS referred to Lee Air also lacked dispatcher experience in the HVAC industry. See [D.E. 123] ¶ 40. Massenburg believes that she has been turned down for many other jobs because of her criminal record, which also includes a conviction for common law robbery. See [D.E. 113] ¶¶ 41–42; [D.E. 123] ¶ 41.

ITS contends that it does not have a "total exclusionary requirement" for applicants with criminal histories and that it does not have any clients, including Lee Air, that would disqualify a candidate solely because of criminal history. [D.E. 113] ¶¶ 8–9 (alteration omitted). ITS also claims that its clients, including Lee Air, evaluate a candidate with a criminal history holistically. See [D.E. 113] ¶ 10. Massenburg responds that ITS's statements are "mere smoke and mirrors." [D.E. 123] ¶¶ 8, 10.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court

4

determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252.; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

### A.

In relevant part, Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to refuse to hire, or otherwise to discriminate against, any individual with respect to that individual's "compensation, terms, conditions, or privileges of employment, because of such individual's race."

5

42 U.S.C. § 2000e-2(a)(1). An employer also cannot "limit, segregate, or classify his . . . applicants for employment in any way which would deprive [that individual] of employment opportunities . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(2).

A Title VII plaintiff can prove discrimination that violates 42 U.S.C. § 2000e-2(a) in two ways: disparate treatment and disparate impact. See EEOC v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032 (2015); Abeles v. Metro. Wash. Airports Auth., 676 F. App'x 170, 174 (4th Cir. 2017) (unpublished). A "disparate treatment claim requires proof of discriminatory motive," while a "disparate impact claim" does not. Abdus-Shahid v. Mayor & City Council of Balt., 674 F. App'x 267, 274 (4th Cir. 2017) (per curiam) (unpublished). Construing Massenburg's pro se complaint liberally, Massenburg alleges a Title VII discrimination claim under both theories.

In Griggs v. Duke Power Co., 401 U.S. 424 (1971), the United States Supreme Court first recognized disparate impact liability under Title VII. See Ricci v. DeStefano, 557 U.S. 557, 577–78 (2009). In 1991, Congress codified the holding of Griggs in 42 U.S.C. § 2000e-2(k)(1)(A)(i). See id. at 578. To prove a disparate impact claim, a Title VII plaintiff must first show "that an employer uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." Id.; see 42 U.S.C. § 2000e-2(k)(1)(A)(i). In other words, a plaintiff must first identify a particular employment practice that, although facially neutral, causes a disparate impact on a protected group. See Connecticut v. Teal, 457 U.S. 440, 446 (1982); Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 265 (4th Cir. 2005); Walls v. City of Petersburg, 895 F.2d 188, 191 (4th Cir. 1990); Rocha v. Coastal Carolina Neuropsychiatric Crisis Servs., P.A., 979 F. Supp. 2d 670, 681 (E.D.N.C. 2013). A plaintiff can use statistical evidence to meet this burden. See Anderson, 406 F.3d at 265; Walls, 895 F.2d at 191.

If a plaintiff establishes a prima facie case, an employer can respond by demonstrating "that

the challenged practice is job related . . . and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i); see Ricci, 557 U.S. at 578; N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476–77 (3d Cir. 2011); Anderson, 406 F.3d at 265. Even if an employer rebuts the plaintiff's prima facie case, "a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." Ricci, 557 at 578. In that situation, the plaintiff will have shown that the employer's alleged business necessity is "mere pretext for discrimination." Teal, 457 U.S. at 447; Anderson, 406 F.3d at 265.

As for Massenburg's prima facie case, Massenburg must identify a specific employment practice that caused a disparate impact to a protected class. Massenburg, however, fails to identify a particular employment practice concerning candidates' criminal history. See [D.E. 122] 3–11. Indeed, Massenburg concedes that she lacks evidence of ITS's policies. See id. at 3–4. Instead, Massenburg merely alleges that, on October 10, 2014, Hunt informed her that Lee Air did not "want anyone with prior convictions." Id. at 6. ITS disputes that it or Lee Air ever had such a policy and asserts that Lee Air hired at least one person with a conviction, a fact that Massenburg does not dispute. See [D.E. 113] ¶ 34; [D.E. 123] ¶ 34. Furthermore, Hunt denied making this statement to Massenburg. See [D.E. 114-3] ¶¶ 13–15. In any event, even if Hunt made this statement, the statement concerns Lee Air's alleged policy, not ITS's policy. Massenburg has not presented admissible evidence that ITS had an employment policy concerning candidates with convictions. See Rocha, 979 F. Supp. 2d at 681. Viewing the evidence in the light most favorable to Massenburg, no rational jury could find that ITS had a particular employment practice concerning candidates with convictions. Thus, Massenburg's disparate impact claim fails. See 42 U.S.C. § 2000e-2(k)(1)(A)(i); Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989), superseded by statute, 42 U.S.C. §

7

2000e-2(k); McNairn v. Sullivan, 929 F.2d 974, 979 (4th Cir. 1991); Walls, 895 F.2d at 191; cf.

Holder v. City of Raleigh, 867 F.2d 823, 826 (4th Cir. 1989).

Alternatively, even if Massenburg could identify a particular employment practice of ITS,

Massenburg cannot establish that this employment practice caused disparate impact on a protected

class. A Title VII plaintiff asserting a disparate impact must show that the identified employment

policy causes a disparate impact injurious to a protected class. See 42 U.S.C. § 2000e-2(k)(1)(A)(i);

Lewis v. City of Chi., 560 U.S. 205, 213 (2010). Generally, a disparate impact plaintiff must

"demonstrate that it is the application of a specific or particular employment practice that has created

the disparate impact under attack." Wards Cove, 490 U.S. at 657. Massenburg has failed to present

evidence of causation. See [D.E. 123] 7–11. Accordingly, Massenburg has failed to establish a

prima facie disparate impact claim under Title VII. See Lewis, 560 U.S. at 213; cf. Reyes v. Waples

Mobile Home Park Ltd. P'ship, 903 F.3d 415, 425–29 (4th Cir. 2018).

Alternatively, "when a plaintiff has made out a prima facie case of disparate impact," the

burden shifts to the defendant to "produc[e] evidence that its employment practices are based on

legitimate business reasons" related to the job in question. Watson v. Fort Worth Bank & Trust, 487

U.S. 977, 998 (1988); see Albemarle Paper Co. v. Moody, 422 U.S. 405, 425 (1975); Griggs, 401

U.S. at 432; Hardie v. Nat'l Collegiate Athletic Ass'n, 876 F.3d 312, 319–20 (9th Cir. 2017). If the

defendant does so, the plaintiff must show that other policies would similarly serve the employer's

legitimate business interests without causing the adverse disparate impact on the protected class.

See Watson, 487 U.S. at 998.

ITS argues that it inquires into criminal history on its online application because it could face

liability under North Carolina law for negligent hiring if it failed to conduct a reasonable

investigation into the background of candidates. See [D.E. 115] 10. In North Carolina, a negligent

hiring claim requires actual or constructive notice of the employee's "unfitness or bad habits."
Medlin v. Bass, 327 N.C. 587, 590–91, 398 S.E.2d 460, 462 (1990); Taft v. Brinley's Grading
Servs., Inc., 225 N.C. App. 502, 516, 738 S.E.2d 741, 750 (2013). ITS's explanation is a legitimate
business reason to inquire into an applicant's criminal history in its online application. Thus, even
if Massenburg established a prima facie disparate impact claim, ITS has advanced a legitimate
business explanation, and Massenburg has not rebutted ITS's business explanation. See Watson,
487 U.S. at 998; Moody, 422 U.S. at 425. Accordingly, the court grants ITS's motion for summary
judgment on Massenburg's Title VII disparate impact claim.

### B.

Construing Massenburg's pro se complaint liberally, Massenburg also asserts a disparate
treatment claim under Title VII.[2] Title VII prohibits employers from refusing to hire any person
because of their race. See 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII violation
in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination
motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under
the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973). See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004)
(en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338
(2013); Hunter-Rainey v. N.C. State Univ., No. 5:17-CV-46-D, 2018 WL 1092963, at *1 (E.D.N.C.
Feb. 28, 2018) (unpublished), aff'd, 774 F. App'x 801 (4th Cir. 2018) (per curiam) (unpublished).

Massenburg lacks direct evidence of racial discrimination and proceeds under the

---

[2] To the extent that Massenburg also asserts a disparate treatment claim under 42 U.S.C. §
1981, the "framework of proof for disparate treatment claims . . . is the same for actions brought
under Title VII, or [section] 1981, or both statutes." Mallory v. Booth Refrigeration Supply Co., 882
F.2d 908, 910 (4th Cir. 1989).

9

McDonnell-Douglas framework. To establish a prima facie case of discrimination in hiring, a plaintiff must show that (1) the plaintiff is a member of a protected class, (2) the plaintiff applied and was qualified for the position in question, (3) despite her qualifications, the plaintiff was rejected, and (4) after her rejection, the position remained open or was filled in a manner giving rise to an inference of discrimination. See EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001); Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998); Hunter-Rainey, 2018 WL 1092963, at *2.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11 (1993). If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the [defendant's] stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Burdine, 450 U.S. at 256; King v. Rumsfield, 328 F.3d 145, 150–54 (4th Cir. 2003).

A plaintiff can prove pretext by showing that the alleged nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see Reeves, 530 U.S. at 147. In analyzing the record concerning pretext, the court does not sit to decide whether the employer in fact discriminated against the plaintiff. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 215–17 (4th Cir. 2007); Hawkins v. PepsiCo., Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext within the meaning of Reeves and its Fourth Circuit progeny.

10

An employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that" the alleged illegal discrimination did not occur. Reeves, 530 U.S. at 148. Moreover, a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate, nondiscriminatory reasons for adverse employment action. See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999); Iskander v. Dep't of the Navy, 116 F. Supp. 3d 669, 678–79 (E.D.N.C. 2015), aff'd, 625 F. App'x. 211 (4th Cir. 2015) (per curiam) (unpublished). In hiring an employee or choosing candidates to interview, an employer can lawfully select more qualified candidates. See Hux v. City of Newport News, 451 F.3d 311, 317–18 (4th Cir. 2006).

As for Massenburg's prima facie case, Massenburg is a member of a protected class under Title VII, and the court assumes without deciding that Massenburg applied for the position with Lee Air. Nonetheless, Massenburg has not established that she was qualified for the position. Lee Air required one year of dispatcher experience in any industry. See [D.E. 113] ¶ 12; [D.E. 114-3] ¶ 5. Although Massenburg claims that White reviewed Massenburg's résumé that listed dispatcher experience, see, e.g., [D.E. 113] ¶ 22, Massenburg did not include that experience on her application to ITS. See [D.E. 113] ¶¶ 35–39; Ex. 7 [D.E. 114-3] 16–19. Accordingly, no rational juror could conclude that ITS knew that Massenburg met the minimum qualifications of the position with Lee Air when ITS decided not to refer her to Lee Air. Therefore, viewing the evidence in the light most favorable to Massenburg, no rational juror could find that Massenburg was qualified for the position.

Alternatively, even assuming that Massenburg meets the first three elements of her prima facie case, ITS did not reject Massenburg in circumstances that permit a reasonable inference of race discrimination. Hunt intended to refer only the three candidates that she selected for the position

with Lee Air. See [D.E. 113] ¶ 31. Of the three candidates, one was African-American. See id. ¶ 17. Massenburg's allegation that Hunt stated that Lee Air would not hire anyone with a criminal history, by itself, does not permit an inference of race discrimination. Thus, Massenburg has failed to establish a prima facie case. See Hunter-Rainey, 2018 WL 1092963, at *2–3.

Alternatively, even assuming that Massenburg established a prima facie case of race discrimination, ITS had a legitimate, non-discriminatory reason for not referring Massenburg to Lee Air: Hunt thought three other candidates were more qualified than Massenburg and did not intend to refer anyone else to Lee Air. As for pretext, Massenburg speculates that "unlawful discrimination . . . likely motivated" ITS. [D.E. 122] 17. Massenburg's speculation is insufficient to show that ITS's explanation is "unworthy of credence," and she otherwise fails to offer evidence that raises a genuine issue of material fact concerning pretext. Mereish, 359 F.3d at 336; see Hux, 451 F.3d at 317–18. Thus, viewing the evidence in the light most favorable to Massenburg, no rational jury could find that ITS discriminated against Massenburg based on her race. Accordingly, the court grants ITS's motion for summary judgment on Massenburg's disparate treatment claim.

C.

On June 11, 2018, Massenburg moved to stay any action on ITS's motion for summary judgment pending further discovery [D.E. 132] and filed a memorandum in support [D.E. 133]. On July 16, 2018, ITS responded in opposition [D.E. 149].

Generally, a court should grant a motion for summary judgment only "after adequate time for discovery." Celotex, 477 U.S. at 322; see McCray v. Md. Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014). "[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover" information critical to responding to a motion for summary judgment. Anderson, 477 U.S. at 250 n. 5; see Dufau v. Price, 703 F. App'x 164, 167 (4th Cir. 2017) (per

12

curiam) (unpublished). Under Rule 56(d) of the Federal Rules of Civil Procedure, a district court can stay a motion for summary judgment if the nonmoving party shows specifically with an affidavit that it cannot "present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); see Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014); Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006). The Fourth Circuit places "great weight" on the Rule 56(d) affidavit. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961–62 (4th Cir. 1996).

A "court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Pisano, 743 F.3d at 931; see Tyree v. United States, 642 F. App'x 228, 230 (4th Cir. 2016) (per curiam) (unpublished); Poindexter v. Mercedes-Benz Credit Corp., 792 F.3d 406, 411 (4th Cir. 2015); Ingle, 439 F.3d at 195. But a court may grant the motion if "the nonmovant seeks necessary information possessed only by the movant" and has not had a reasonable opportunity to discover the information. Pisano, 743 F.3d at 931; see Hodgin v. UTC Fire & Sec. Ams. Corp., 885 F.3d 243, 250 (4th Cir. 2018); Ingle, 439 at 196–97. Rule 56(d) motions are "broadly favored" and should be granted if necessary to protect nonmoving parties from premature motions for summary judgment. McCray, 741 F.3d at 484; Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (en banc).

To support her motion, Massenburg argues that the date on which Lee Air hired Angela V. is relevant to her prima facie case. See [D.E. 133] 2. The court rejects this argument. The date on which Lee Air hired Angela V., by itself, does not create a genuine issue of material fact concerning whether the circumstances reasonably permit an inference of racial discrimination. Furthermore, Massenburg already knows the identity of all three candidates referred to Lee Air, see [D.E. 113] ¶¶ 15–19, and that information also is not material to her Title VII claims. Finally, Massenburg did not

13

file a Rule 56(d) affidavit. See Evans, 80 F.3d at 961–62. Accordingly, the court denies Massenburg's motion to stay.

Alternatively, Massenburg has not shown why the period for discovery before ITS's motion for summary judgment was insufficient. "A party requesting relief pursuant to Rule 56(d) must demonstrate that the party has not had sufficient time to develop information needed to oppose the summary judgment motion." Cooke v. U.S. Bureau of Prisons, 926 F. Supp. 2d 720, 725 (E.D.N.C. 2013); see, e.g., Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002). For example, if the parties have not engaged in any discovery, then granting relief under Rule 56(d) may be appropriate. See, e.g., Mathis v. GEO Grp., Inc., No. 2:08-CT-21-D, 2011 WL 2899135, at *9 (E.D.N.C. July 18, 2011) (unpublished). Massenburg, however, has had ample opportunity to discover information essential to opposing ITS's motion for summary judgment. See Hodgin, 885 F.3d at 250. In fact, Massenburg was able to conduct discovery between November 6, 2017, and April 20, 2018, and relied on materials obtained in discovery in opposing ITS's motion for summary judgment. See [D.E. 132] 2. Thus, the court rejects Massenburg's Rule 56(d) motion.

III.

On March 9, 2018, Massenburg moved for leave to file a second amended complaint [D.E. 97]. On May 15, 2018, Magistrate Judge Numbers ordered Massenburg to file an amended complaint that named both ITS and Lee Air as defendants [D.E. 125]. However, Judge Numbers did not authorize any new claims against ITS. See id. Massenburg's motion for leave to amend remained pending. On May 30, 2018, Massenburg filed a second amended complaint against ITS and Lee Air [D.E. 128]. In her second amended complaint, Massenburg added two new claims against ITS, a Title VII retaliation claim and a claim under the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681, et seq. See [D.E. 97-2] 18–21. On June 14, 2018, ITS moved to strike

14

Massenburg's second amended complaint.

A.

Generally, a party may amend a pleading once as a matter of course. See Fed. R. Civ. P. 15(a)(1). In all other cases, a party must obtain either the consent of the opposing party or the leave of court, which the court should freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, a motion for leave to amend should be denied only if it would be prejudicial to the nonmoving party, if the moving party has acted in bad faith, or if the amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962); Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010); Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001); Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).

When a party seeks to amend a pleading after a deadline established in a scheduling order, the party first must satisfy the good cause standard in Rule 16. See Fed. R. Civ. P. 16(b)(4); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); Sansotta ex rel. Klaus v. Town of Nags Head, No. 2:10-CV-29-D, 2011 WL 3438422, at *1 (E.D.N.C. Aug. 5, 2011) (unpublished). This standard "focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cty., 182 F. App'x 156, 162 (4th Cir. 2006) (per curiam) (unpublished); see Nourison Rug, 535 F.3d at 298; Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *8 (E.D.N.C. Sept. 28, 2011) (unpublished). "Good cause exists when a party's reasonable diligence before the amendment deadline would not have resulted in the discovery of the evidence supporting a proposed amendment." Sansotta, 2011 WL 3438422, at *2; see United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007). A scheduling order is "not a frivolous piece of

15

paper, idly entered, which can be cavalierly disregarded," and a movant "must demonstrate that the reasons for the tardiness of his motion justify a departure from" the scheduling order. Rassoull v. Maximus, Inc., 209 F.R.D. 372, 373–74 (D. Md. 2002) (quotation omitted). If a party meets the Rule 16(b) standard, then the party must also satisfy the Rule 15(a)(2) standard. See Cook v. Howard, 484 F. App'x 805, 814–15 (4th Cir. 2012) (per curiam) (unpublished); Hexion Specialty Chems. Inc., 2011 WL 4527382, at *8; Godwin, 247 F.R.D. at 506.

On March 9, 2018, Massenburg moved for leave to file a second amended complaint [D.E. 97]. This court's scheduling order of November 6, 2017, required the parties to move to amend all pleadings "promptly after the information giving rise to the motion bec[ame] known to the party." [D.E. 77] 2. The order further stated that "[a]ny such motion filed after December 15, 2017, must meet the standards of [Rules] 15 and 16." Id. at 3. Accordingly, Massenburg's motion for leave to amend must meet the standards of both Rule 16(b) and Rule 15(a)(2). See Cook, 484 F. App'x at 814–15.

B.

As for Massenburg's Title VII retaliation claim, Massenburg's second amended complaint contains allegations concerning her EEOC charge. Massenburg filed her EEOC charge on January 2, 2015, and she contends that ITS retaliated against her for filing that charge by not cooperating with the EEOC. See [D.E. 97-2] 19. Massenburg, however, knew of ITS's alleged non-cooperation with the EEOC well before November 6, 2017. Therefore, Massenburg has not met Rule 16's good cause standard, and the court denies Massenburg's motion to file a second amended complaint.

Alternatively, Massenburg cannot satisfy Rule 15 because her motion to amend is futile. A district court may deny a plaintiff's request for leave to amend the complaint when the amendment would be futile. See Foman, 371 U.S. at 182; Newport News Holdings Corp. v. Virtual City Vision,

16

Inc., 650 F.3d 423, 439 (4th Cir. 2011). An amendment is futile if the amended complaint would fail to state a claim upon which relief can be granted. See, e.g., Van Leer v. Deutsche Bank Sec., Inc., 479 F. App'x 475, 479 (4th Cir. 2012) (unpublished); United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 375 (4th Cir. 2008). Whether a complaint states a claim upon which relief can be granted depends on whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63, 570 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam).

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (emphasis and quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 678–79; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see Giarratano, 521 F.3d at 304 n.5.

As for Massenburg's retaliation claim, Massenburg lacks direct evidence of retaliation. Thus, she proceeds under the McDonnell-Douglas framework. To establish a prima facie case of retaliation, Massenburg must show that (1) she engaged in protected activity, (2) the employer took an action against her that a reasonable employee would find materially adverse, and (3) a causal

connection existed between the protected activity and the adverse action. See, e.g., Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67–70 (2006); DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland, 487 F.3d at 218; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004), abrogated on other grounds by Foster, 787 F.3d at 299; Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001).

Under Title VII, a plaintiff engages in protected activity when she "oppose[s] any practice made an unlawful employment practice by [Title VII]" or because she makes a charge, testifies, assists, or participates "in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); see Clausell v. Bayer Corp., No. 5:15-CV-50-BO, 2015 WL 5146704, at *5 (E.D.N.C. Sept. 1, 2015) (unpublished). Protected activities include using "informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998); see Chang Lim v. Azar, 310 F. Supp. 3d 588, 603–04 (D. Md. 2018). A plaintiff must show that the employment practices that she opposed were either actually unlawful under Title VII or that she reasonably believed that the employment practices were unlawful. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam); DeMasters, 796 F.3d at 417; Boyer-Liberto, 786 F.3d at 282; Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005); Chang Lim, 310 F. Supp. 3d at 603–04.

An adverse employment action includes a "discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Mitchell v. N.C. Div. of Emp't Sec., 76 F.

Supp. 3d 620, 625 (E.D.N.C. 2014) (alteration omitted), aff'd, 599 F. App'x 517 (4th Cir. 2015) (per

curiam) (unpublished); see Burlington N. & Santa Fe Ry., 548 U.S. at 68–70; Holland, 487 F.3d at

219. A plaintiff meets this element if the alleged action "might have dissuaded a reasonable worker

from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry., 548 U.S. at

68 (quotation omitted); see Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 442 (E.D.N.C.

2012). "There must be some significant detrimental effect" to the plaintiff. Holland, 487 F.3d at

219.

As for Massenburg's prima facie case, Massenburg engaged in protected activity by filing

an EEOC charge on January 2, 2015. See [D.E. 124-1]; [D.E. 97-1] 4. Massenburg alleges that ITS

took a materially adverse action against her by refusing to cooperate with the EEOC's investigation.

See [D.E. 97-2] 19. However, ITS's alleged failure to cooperate with the EEOC's investigation,

even if true, would not dissuade a reasonable worker from filing a discrimination charge. Moreover,

Massenburg has failed to plausibly allege causation between her filing the charge and the allegedly

adverse action. Accordingly, Massenburg has failed to plausibly allege retaliation in violation of

Title VII, and the court denies as futile her motion to amend.

## C.

As for Massenburg's FCRA claim, Massenburg alleges that, nearly three years after she

submitted her online application to ITS, ITS "r[an] her background and disbursed [her] personal

information without [her] knowledge" by "furnish[ing] [her] criminal background report to the

EEOC." [D.E. 97-2] 21.[3] Massenburg alleges that she had no notice of the disclosure, depriving her

---

[3] It is not clear that ITS did so. Massenburg cites as evidence a FOIA request, which she filed with the EEOC, indicating that the EEOC withheld some information from disclosure because releasing the information could constitute an "unwarranted invasion of personal privacy." [D.E. 97-29] 5, 10. The document does not state what information the EEOC withheld.

of the opportunity to verify the accuracy of the disclosure in violation of her rights under FCRA. Id.

Massenburg has failed to meet Rule 16's good cause standard. Thus, the court denies Massenburg's motion to amend her complaint to add an FCRA claim.

Alternatively, Massenburg fails to plausibly allege an FCRA claim. Congress enacted FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007); see Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142, 147 (4th Cir. 2008). FCRA applies only if the information that ITS allegedly provided to the EEOC constitutes a "consumer report" within the meaning of 15 U.S.C. § 1681a(d)(1). See, e.g., 15 U.S.C. §§ 1681b, 1681d, 1681m; Benzing v. Tharrington-Smith, LLP, No. 5:10-CV-533-F, 2012 WL 1015957, at *2 (E.D.N.C. Mar. 23, 2012) (unpublished), aff'd, 485 F. App'x 624 (4th Cir. 2012) (per curiam) (unpublished); cf. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016). A consumer report includes "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used" for purposes enumerated in the statute, including employment purposes. § 1681a(d)(1). Massenburg does not allege any facts concerning the purpose of the alleged disclosure. Additionally, Massenburg does not allege any facts concerning whether ITS is a "consumer reporting agency" within the meaning of FRCA. See 15 U.S.C. § 1681a(f). Accordingly, Massenburg fails to plausibly allege an FRCA claim. Thus, the court denies as futile Massenburg's proposed FCRA claim.

D.

Alternatively, the new claims against ITS fall outside the scope of the court's order of May 15, 2018, granting Massenburg leave to file an amended complaint that named Lee Air as a

defendant [D.E. 125]. Although Massenburg listed the Title VII retaliation and FRCA claims in her proposed second amended complaint, Massenburg did not obtain leave to amend her pleadings to add these new claims against ITS before filing a second amended complaint.

A court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). If a plaintiff files an amended pleading without securing leave to amend, a court can strike the amended pleading. See Laschkewitsch v. Lincoln Life & Annuity Distribs., Inc., No. 5:13-CV-315-BO, 2014 WL 715420, at *1 (E.D.N.C. Feb. 24, 2014) (unpublished). Although Massenburg had leave to amend her complaint to add Lee Air as a defendant, she did not have leave to amend her complaint to add new claims against ITS. See [D.E. 125] 8. Thus, the court grants ITS's motion to strike the Title VII retaliation and FCRA claims against it in Massenburg's second amended complaint.

IV.

On July 27, 2018, Lee Air moved to dismiss Massenburg's second amended complaint for lack of jurisdiction and failure to state a claim. A motion to dismiss under Rule 12(b)(1) of the Federal Rule of Civil Procedure tests subject-matter jurisdiction, which is "the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss under Rule 12(b)(1), the court may consider evidence outside of the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass

on the merits of that case." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005).

A district court has subject-matter jurisdiction over a Title VII claim only if the plaintiff exhausted administrative remedies before filing suit. See, e.g., Sydnor v. Fairfax Cty., 681 F.3d 591, 593–94 (4th Cir. 2012); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Tagirova v. Elizabeth City State Univ., No. 2:16-CV-70-D, 2017 WL 4019516, at *1 (E.D.N.C. Sept. 11, 2017) (unpublished); Webb v. N.C. Dep't of Crime Control & Pub. Safety, 658 F. Supp. 2d 700, 707–09 (E.D.N.C. 2009). Title VII requires plaintiffs to exhaust administrative remedies by filing a charge with the EEOC before initiating litigation in federal court. See Sydnor, 681 F.3d at 593. This requirement is an "integral part of the Title VII enforcement scheme." Id. (quotation omitted). Under Title VII, a charge must be filed within 180 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1); Jones, 551 F.3d at 300. A failure to file a charge with the EEOC in a timely fashion is not jurisdictional and is subject to waiver, estoppel, and equitable tolling. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Nonetheless, a failure to exhaust administrative remedies before filing suit in federal court is jurisdictional. See Jones, 551 F.3d at 300; Williams v. N.C. Admin. Office of Courts, No. 4:18-CV-63-D, 2018 WL 6345367, at *2–3 (E.D.N.C. Dec. 4, 2018) (unpublished).[4]

The contents of a plaintiff's EEOC charge determine the scope of a plaintiff's right to maintain a Title VII claim in federal court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416 (4th Cir. 2014); Johnson v. Pitt Cty. Bd. of Educ., No. 4:16-CV-214-D, 2017 WL 2304211, at *3 (E.D.N.C. May 25, 2017) (unpublished). If a plaintiff's claims in her complaint are

---

[4] The Supreme Court has granted certiorari to decide whether Title VII's administrative exhaustion requirement is jurisdictional. See Davis v. Fort Bend Cty., 893 F.3d 300 (5th Cir. 2018), cert. granted, No. 18-525, 2019 WL 166880 (U.S. Jan. 11, 2019).

"reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," the court retains jurisdiction over the claims even if a plaintiff failed to file an EEOC charge before filing suit. Sydnor, 681 F.3d at 594; see Smith v. First Union Nat'l Bank, 202 F.3d 234, 237 (4th Cir. 2000); Evans, 80 F.3d at 963; Johnson v. SecTek, Inc., No. ELH-13-3798, 2015 WL 502963, at *4 (D. Md. Feb. 4, 2015) (unpublished); Allen v. City of Raleigh, No. 5:13-CV-522-D, 2014 WL 840735, at *2 (E.D.N.C. Mar. 4, 2014) (unpublished). In contrast, a claim exceeds the scope of an EEOC charge if the claim references different actors, different violations, or different time frames than those listed in the EEOC charge. See Sydnor, 681 F.3d at 593; Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005).

As for Massenburg's Title VII claims against Lee Air, Massenburg's EEOC charge of January 2, 2015, only names ITS. See [D.E. 7-1]. Because it does not name Lee Air, this charge does not satisfy Title VII's exhaustion requirement. On September 19, 2018, Massenburg filed a second charge of discrimination and retaliation with the EEOC and named both ITS and Lee Air. See [D.E. 168-4]. However, Massenburg filed this charge after she added Lee Air as a defendant to this case. Thus, the EEOC charge does not satisfy the exhaustion requirement. See Smith, 202 F.3d at 247. Accordingly, the court lacks subject-matter jurisdiction over Massenburg's Title VII claims against Lee Air.

Massenburg also alleges a state law violation of the North Carolina Equal Employment Protection Act ("the NCEEPA"), N.C. Gen. Stat. § 143-422.2, based on race. See [D.E. 128] 1. In relevant part, the NCEEPA states that it is the "public policy of [North Carolina] to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a).

North Carolina law does not recognize a private cause of action under the NCEEPA. See, e.g., Smith, 202 F.3d at 247; Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544 (E.D.N.C. 2008); Mullis v. Mechs. & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C. 1997). Moreover, North Carolina does not recognize a wrongful failure to hire claim. See Schulze v. Meritor Auto., Inc., 13 F. App'x 89, 90 (4th Cir. 2001) (per curiam) (unpublished); Bufford v. Centurylink, 759 F. Supp. 2d 707, 708 (E.D.N.C. 2010). Thus, Massenburg has not plausibly alleged a claim under the NCEEPA against Lee Air. Accordingly, the court dismisses the claim.

V.

On April 18, 2018, Massenburg moved to extend the deadline for dispositive motions in the court's November 6, 2017, scheduling order pursuant to Rule 16(b)(4) of the Federal Rule of Civil Procedure [D.E. 110]. Under the scheduling order, discovery closed on March 23, 2018, and the deadline for dispositive motions was April 20, 2018. Massenburg proposes that the new deadline be 45 days after the court has ruled on all pending motions. See id. at 1. In support, Massenburg argues that she is confused about whether her Title VII retaliation and FRCA claims are properly before the court and that she is awaiting further discovery. See id. at 1–2.

Rule 16(b)(4) requires a movant to demonstrate good cause for a district court to modify a scheduling order. See Fed. R. Civ. P. 16(b)(4). This standard "requires the party seeking relief to show that the deadlines cannot reasonably be met despite the party's diligence." Cook, 484 F. App'x at 815 (alteration and quotation omitted). The "primary consideration is the diligence of the moving party." Montgomery, 182 F. App'x at 162; see Opsitnick v. Crumpler, No. 5-13-CV-835-D, 2015 WL 12860285, at *1 (E.D.N.C. Oct. 19, 2015) (unpublished). A litigant does not establish good cause if the district court "concludes that the party seeking relief . . . has not acted diligently in compliance" with a scheduling order. McMillan v. Cumberland Cty. Bd. of Educ., 734 F. App'x

24

836, 846 (4th Cir. 2018) (unpublished).

Massenburg has failed to show why she was unable to file a dispositive motion by the scheduling order's deadline. Thus, the court denies Massenburg's motion to amend the scheduling order.

## VI.

On January 2, 2019, Massenburg filed a document entitled "Supplemental claims to DE 168-2 and 3" [D.E. 171]. On January 16, 2019, defendants moved to strike this filing [D.E. 173].

Under the Federal Rules of Civil Procedure, a court may "strike from a pleading an insufficient defendant or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Notably, the court can do so sua sponte. See Fed. R. Civ. P. 12(f)(1). Although granting a motion to strike is generally disfavored, the court retains the discretion to do so. See Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001); Reale v. Wake Cty. Human Servs., No. 5:11-CV-682-D, 2013 WL 2635181, at *6 (E.D.N.C. June 12, 2013) (unpublished).

Massenburg's supplemental claims merely reiterate her claims and contentions. See [D.E. 171] 1–6. As discussed, the court has dismissed those claims, and Massenburg's latest filing adds nothing. Thus, the court strikes the filing and denies defendants' motion to strike as moot. See, e.g., Spears v. Liberty Life Assurance Co. of Bos., 885 F. Supp. 2d 546, 557 (D. Conn. 2012); Smith v. Jefferson Pilot Fin. Ins. Co., 367 F. Supp. 2d 839, 843–44 (M.D.N.C. 2005); Gourdine v. Ellis, 435 F. Supp. 882, 883–84 (D.S.C. 1977).

## VII.

In sum, the court GRANTS ITS's motion for summary judgment [D.E. 112] and DENIES Massenburg's motion to stay summary judgment [D.E. 132]. The court DENIES Massenburg's motion for leave to file a second amended complaint [D.E. 97] and her motion for leave to file a sur-

25

reply [D.E. 151]. The court GRANTS ITS's motion to strike in part Massenburg's second amended complaint [D.E. 134], GRANTS Lee Air's motion to dismiss [D.E. 154], and DENIES Massenburg's motion to amend the court's scheduling order [D.E. 110]. The court also DISMISSES as moot defendants's motion for a protective order [D.E. 105] and Massenburg's motion to compel [D.E. 117], currently pending before Magistrate Judge Gates. The court STRIKES Massenburg's latest filing [D.E. 171] and DISMISSES as moot defendants' motion to strike [D.E. 173]. Defendants may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This __4__ day of February 2019.

JAMES C. DEVER III
United States District Judge